Argued January 28, affirmed February 18, 1919.

## JOHNSON v. MEYERS.

(177 Pac. 631.)

Evidence—Declarations—Letters Occasioned by Contract.

1. In action by contractor to haul wood, for damages through having been misled as to character and condition of defendants' flume, place where wood was to be measured, etc., letters from plaintiff to defendants, occasioned by transaction, and pertaining to execution and performance of contract, *held* admissible as declarations and conversations between parties, and not inadmissible as self-serving declarations.

Fraud—Damages—Lost Profits.

2. In action for fraud inducing plaintiff to contract with defendants, plaintiff was not entitled to recover profit he would have made on contract, if representations of defendants had been true.

Appeal and Error—Reservation of Grounds of Review—Exception to Instruction.

3. In action by contractor to haul wood for fraudulent representations of owners, by which he was induced to make contract, exceptions at trial *held* not to include exception to instruction erroneously permitting plaintiff contractor to recover lost profits.

Appeal and Error—Reservation of Grounds of Review—Exceptions—Construction.

4. A liberal construction should be placed upon exceptions which are taken in open court at a trial.

Contracts—Substantial Compliance.

5. Contractor to haul some thousands of cords of wood substantially complied with his contract where he hauled all the wood except about sixty-seven and one-half cords.

Contracts—Extension of Time.

6. Where contractor to haul wood wrote owners asking for extension of 30 days' time in which to complete contract, which was granted, there was no new contract, but merely extension of time in which to perform original contract.

[As to loss of profits and when an element of damage, see note in 60 Am. Rep. 488.]

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 2.

In April, 1916, the defendants were the owners of about 3,500 cords of wood on certain lands in Clackamas County, approximately three miles from Bull Run, on the line of the Mt. Hood Railway. Desiring to place it on the market, they advertised in a Portland newspaper for someone to haul the wood and in response the plaintiff called upon them, with the result that a written contract was executed between them by which the plaintiff undertook and agreed to deliver the wood to the railroad, to commence work on or before May 1, 1916, and to complete it on or before September 1st of that year, and executed a bond in the sum of $1,500 for the faithful performance of his part of the contract. The defendants agreed to pay the plaintiff $1.30 per cord for all dry fir, maple or alderwood and $1.45 per cord for all boiler firwood placed in or piled and ricked at a certain chute then constructed on the premises. The plaintiff agreed to accept as final the number of cords of wood placed in the chute as evidenced by the bills of lading issued by the railroad company. He entered upon the performance of the contract and delivered all of the wood except about 67.5 cords. After a substantial completion of the contract he brought this action against the defendants, in which the contract is set out and made a part of his complaint.

The plaintiff alleges that he was misled and deceived as to the character and condition of the flume, as to where the wood should be measured, the manner in which it was piled, as to the want and condition of the roads and as to the character of the soil, having been informed that there were no low or swampy places

upon the land.   He contends that the defendants knew
the actual facts as to all of such matters; that he re-
lied upon their statements and representations  and
was ignorant of the true situation; that relying upon
the false statements of the defendants he was induced
to and did execute the contract; that there was a heavy
shortage between the measurement of the wood as
it was corded in the timber and on the cars of the rail-
road; that the ground was wet and swampy; that
there were not any roads constructed through the
wood; that the chute was worn out and defective and
would not carry the wood.   The plaintiff further al-
leges that after discovering the falsity of defendants'
representations he complained to them and protested
against performing the contract, warning the defend-
ants that he would hold them responsible in damages
on account of such false representations; that the
defendants at all times  threatened to hold  plaintiff
to his contract, saying that if he attempted to abandon
it they would have recourse to, and would enforce,
the bond; that the plaintiff completed the contract by
hauling out and delivering at the chute all of the cord-
wood, with the exception of a small portion, and that
he so delivered 3,761.5 cords at an actual cost to him
of $8,643.   He avers that if the statements and rep-
resentations which the defendants made at the time
the contract was executed had been true, he would
have made a profit of $848, and that by reason of the
defendants' false and fraudulent representations he
lost all of that profit and the further sum of $5,287.04.

In their answer the defendants admit the execution
of the contract, but deny all other material allegations
of the complaint.   For a further and separate defense
they allege, among other things, that the plaintiff
personally informed and satisfied himself with respect

to all of the conditions under which the proposed contract would have to be performed; that thereafter, with full knowledge of the actual conditions then existing, the plaintiff executed the contract; that he did not rely upon any statements or representations of the defendants, but acted solely upon his own judgment, arrived at after a full and complete investigation of all the circumstances and conditions under which the contract would have to be performed and that by reason thereof he is now estopped to allege that he was induced to enter into the contract because of any statements of the defendants or that he in any way relied thereon. The defendants also allege that the plaintiff hauled 2,855.96 cords of wood, for which he was to receive $3,716.18, of which sum $3,355.96 has been paid him; that the plaintiff failed and neglected to keep and perform the contract; that he left 91.75 cords of wood in the timber; that in order to have it hauled out the defendants were required to pay $64.23 above the contract price; that $295.99, and no more, is due and owing upon the contract, which amount was tendered in court. The defendants contend that at the time of the execution of the contract the chute or flume was in good condition; that it was built in a substantial and workmanlike manner; that pending the completion of the contract it was at all times kept in good order and repair by the defendants and that any obstruction or delay caused by the flume was due to the carelessness and negligence of the plaintiff in using it.

The reply denied all of the material allegations of the answer. A trial was had and the jury returned a verdict for the plaintiff for $4,281.84, upon which judgment was entered against the defendants, who prosecute this appeal, assigning error in the admis-

sion of evidence, the giving of certain instructions and the refusal of the court to give instructions requested by the defendants.        AFFIRMED.

For appellants there was a brief over the names of *Messrs. Snow, Bronaugh & Thompson* and *Mr. Carl M. Little,* with an oral argument by *Mr. Earl C. Bronaugh.*

For respondent there was a brief over the names of *Messrs. Clark, Skulason & Clark* and *Mr. W. E. Critchlow,* with oral arguments by *Mr. B. G. Skulason* and *Mr. Critchlow.*

JOHNS, J.—The defendants claim that the verdict should be set aside on the ground that it is excessive, but there is testimony tending to support all of the material allegations of the complaint. The jury found for the plaintiff, and Article VII, Section 3, of the Constitution provides:

"No fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict."

1. Certain letters from the plaintiff to the defendants were introduced in evidence and it is contended that they were in the nature of self-serving declarations and prejudiced the jury. They were occasioned by the transaction and pertained to the execution and performance of the contract, and were admissible under the decision of this court in *Lee* v. *Cooley,* 13 Or. 434 (11 Pac.70), upon the theory that they should be treated as declarations or conversation between the parties.

2. It is also contended that "damages which were within the contemplation of the parties or which were

the necessary or natural consequences of the fraud only can be recovered." That is the law and as we construe the record it is the theory upon which the case was tried and upon which the court instructed the jury. The defendants maintain that "the damages recovered must be limited to the actual loss sustained by reason of the fraud" and that "prospective and uncertain profits cannot be recovered." That is the rule laid down in *Smith* v. *Bolles,* 132 U. S. 125 (33 L. Ed. 279, 10 Sup. Ct. Rep. 39), where the court says:

"If the jury believed from the evidence that the defendant was guilty of the fraudulent and false representations alleged, and that the purchase of stock had been made in reliance thereon, then the defendant was liable to respond in such damages as naturally and proximately resulted from the fraud. He was bound to make good the loss sustained, such as the moneys the plaintiff had paid out and interest, and any other outlay legitimately attributable to defendant's fraudulent conduct; but this liability did not include the expected fruits of an unrealized speculation."

And *Rockefeller* v. *Merritt,* 40 U. S. App. 666 (76 Fed. 909, 22 C. C. A. 608), lays down the rule:

"The true measure of the damages suffered by one who is fraudulently induced to make a contract of sale, purchase, or exchange of property is the difference between the actual value of that which he parts with and the actual value of that which he receives under the contract. It is the loss which he has sustained, and not the profits which he might have made by the transaction. It excludes all speculation, and is limited to compensation."

This is an action of fraud and deceit based upon alleged false and fraudulent representations of the defendants which were made to the plaintiff at the

time of the execution of the contract, by reason of which he was induced to and did execute the contract, and upon which he relied. Among other things, the plaintiff claims that he would have made a profit of $848 if the conditions had been as represented by the defendants, and upon that question the court instructed the jury as follows:

"If you find that if such representations have not been made, he would have gone on with this contract with a profit, you should award to him such sum as in your judgment would represent his profit on his contract."

3, 4. Under the authorities above quoted, we think this was error, but the record does not show that any exception was taken to this instruction. While a liberal construction should be placed upon exceptions which are taken in open court at a trial, the record shows that the only exceptions taken to the charge were to that portion thereof "relating to the right of the plaintiff to reply upon representations as made," to "the effect of the failure of the plaintiff to make his own investigations," to "the right to claim damages under the contract where the wood was mingled" and also "with reference to representations concerning the roads upon the tracts of land." Under the most liberal view, neither of these exceptions can be construed as applying to "profit on his contract." The record shows also that all of the plaintiff's testimony as to profit on his contract was admitted without objection. It is true that the defendants moved to strike out his testimony "about his estimate as to what it would have cost had the conditions been such as he represented them, because he has testified it was simply his estimate of what it would have cost to haul to the roadside. The original amount of a dollar and

a quarter a cord was what he was figuring on on the original estimate.'' The defendants again moved ''to strike that testimony all out in regard to his estimate as to what it would have cost to haul wood had the conditions been such as represented.'' Upon these motions the court made this ruling:

''The testimony will be confined to the haul from the woods and if that testimony did not apply to that it will be stricken out.''

The plaintiff then testified as follows:

''One dollar per cord is the amount from the woods on a gravel bottom.
''Q. Just the same as for the roadside?
''A. Yes.''

No exception was taken to this ruling.

We have carefully examined all of the defendants' requested instructions which were refused, to which refusal exceptions were duly taken and allowed. But neither of them asked the court to charge the jury in substance or effect that ''the damages recovered must be limited to the actual loss sustained by reason of the fraud'' or that ''prospective or uncertain profits cannot be recovered.'' For such reason, that question is not properly before us. Some contention is made that the contract was modified; that it was not carried out by the plaintiff; that for such reason he is estopped to claim or assert that he was deceived or misled by false representations or that he relied thereon.

5. The evidence was that the plaintiff did haul all of the wood except about 67.5 cords; this would be a substantial compliance with the contract. There is also evidence indicating that the plaintiff negotiated with the defendant for the purchase of the remaining wood left in the timber and that they agreed upon the price.

6. Under the contract all of that wood was to be hauled by September 1, 1916. On August 12th the plaintiff wrote to the defendants, asking for an extension of thirty days in which to complete the contract; in response the defendants advised him that they "would grant him an extension of thirty days." This did not amount to a new contract; it was merely an extension of time in which to perform the original agreement.

The instructions were very exhaustive and fully presented every material issue under the pleadings. The important questions were of fact, upon which the jury found for the plaintiff. In so far as defendants' requested instructions are legally correct they were embodied in the charge of the court, and outside of the instructions as to profit on the contract, to which no exception was taken, there was no error in the charge as given. After a careful examination of the record as presented, we are of the opinion that the judgment should be affirmed.                        AFFIRMED.

McBRIDE, C. J., and BEAN and BENNETT, JJ., concur.