Argued and submitted September 6, reversed October 23, 1979

In the Matter of the Question in Controversy
between John W. Bussman, M.D.,
and Shannon Hansen, a minor,
by and through her conservator,
Sandra L. Hansen,

HANSEN,
*Respondent,*
*v.*
BUSSMAN,
*Petitioner.*

(TC A7704-06141, CA 11053, SC 26171)

601 P2d 794

Garr M. King, Portland, argued the cause for petitioner. With him on the brief were Allen Reel and Kennedy, King & McClurg, Portland.

Richard P. Noble, Portland, argued the cause for respondent. With him on the briefs were R. Ladd Lonnquist and Noble & Lonnquist, Portland.

TONGUE, J.

DENECKE, C.J., specially concurring. LENT, J., joins.

**TONGUE, J.**

Pursuant to ORS 27.010, the parties submitted to the circuit court for determination without action or suit and based upon stipulated facts the question "whether or not an enforceable and binding settlement had been achieved" by them in an action for personal injuries involving a minor pending appeal by the defendant in that case from a judgment for $500,000 in favor of the plaintiff.[1] By an "order determining controversy" the circuit court held that the parties had agreed upon a binding and enforceable settlement and that the judgment in that case had been satisfied by the payment of $450,000 in accordance with that settlement agreement. On appeal by the plaintiff the Court of Appeals reversed that order. 39 Or App 287, 592 P2d 239 (1979). We allowed respondent's petition for review.

The facts, as stipulated by the parties, are as follows:

"1.  On December 2, 1974, judgment was entered in favor of Shannon Hansen, a minor, by and through her then conservator, William L. Dickson, against Dr. John W. Bussman in the sum of $500,000 together with costs, which in aggregate bear interest at the rate of 6% per annum in the case entitled Shannon Hansen, a minor, by and through her conservator, William L. Dickson v. John W. Bussman, M.D.; J.R. Strober; and George E. Meuhleck, M.D., Multnomah Circuit Court No. 387-450, the record which is on file.

"2.  On January 13, 1975, upon the filing of an appropriate undertaking, that case was duly appealed by defendant Dr. Bussman to the Oregon Supreme Court. After the filing of briefs, the case was argued and submitted to the Supreme Court on February 4, 1976, for decision.

---

[1] ORS 27.010 provides:

"Parties to a question in controversy, which might be the subject of an action or suit in a court of record with such parties plaintiffs and defendants, may submit the question to the determination of such court without action or suit, as provided in ORS 27.020 and 27.030."

"3.  During the pendency of the appeal and while that case was under consideration by the Supreme Court, the parties entered into extensive settlement negotiations. By letter dated April 16, 1976, a copy of which is attached hereto and incorporated herein as Exhibit A, plaintiff-respondent in that case offered to settle for the sum of $400,000, or, in the alternative, to enter into an agreement whereby defendant-appellant would pay $250,000 in the event that the Supreme Court reversed the judgment or $450,000 in the event that the Supreme Court affirmed the judgment. By letter dated and hand-delivered on April 27, 1976, a copy of which is attached hereto and incorporated herein as Exhibit B, defendant-appellant accepted the alternative offer and agreed to pay $250,000 or $450,000 depending upon the decision of the Supreme Court.

"4.  *The parties agree and stipulate that the proposal as set out in paragraph 3 was agreed to by Lonnie F. Hansen, Sandra L. Hansen, and Judge William Dickson as conservator for Shannon Hansen, a minor; that said agreement was fair and reasonable at the time made, and that at the time of the agreement, it was contemplated by all parties that the conservator and Mr. and Mrs. Hansen would petition for and request approval of the settlement by the Probate Department.*

"5.  On April 28, 1976, the conservator met with Judge William McLennan of the Probate Department regarding the file entitled In the Matter of the Conservatorship of Shannon Hansen, a minor, Multnomah County Circuit Court No. 121-799. Judge McLennan indicated tentatively that he would approve the settlement, but stated that a petition should be prepared and that the parents of the minor child should appear before the court. The conservator returned to his office and immediately arranged for the parents to travel from their home in Scappoose to Portland, hoping they would arrive before 5:00 p.m. so that they could appear before the court. He also prepared a Petition for Authority to Settle Claim, Pay Attorney Fee, and Expenses, a copy of which is attached hereto and incorporated herein as Exhibit C. The parents arrived at approximately 5:30 p.m.

and the petition was signed, but because of the time, they did not appear before the court. The conservator was scheduled to be out of town on the following day, Thursday, April 29, 1976, so he asked the parents to return to his office at 8:30 a.m. on Friday, April 30, 1976.

"6. On Thursday, April 29, 1976, the Supreme Court handed down its decision affirming the judgment which, together with interest, amounts to approximately $550,000. The parents arrived at the conservator's office the following morning at 8:30 a.m., but did not appear before the court.

"7. On May 10, 1976, proceedings were held before the Probate Department. A copy of the transcript of the proceedings is attached hereto and incorporated herein as Exhibit D. The Probate Department declined to act because the parents had not presented the petition.

"8. Defendant-appellant did not file a petition for rehearing before the Supreme Court. (Letter dated May 13, 1976, incorporated herein as Exhibit E.) On May 18, 1976, defendant paid and the plaintiff accepted the sum of $450,000 with both parties preserving their rights to assert their respective positions taken concerning the settlement. (Letter dated May 18, 1976, incorporated herein as Exhibit F.)

"*The parties request a determination by this court as to whether or not an enforceable and binding settlement had been achieved.* Pursuant to ORS 27.020, the parties verify that the controversy is real, that the above statement of the case is true and correct, and that these proceedings are taken in good faith to determine the rights of the parties." (Emphasis added)

Plaintiff contended on appeal to the Court of Appeals that:

1. "The Court erred in finding that the conservator had a duty to petition the Probate Court for approval of the settlement agreement, even though that act would have violated the conservator's fiduciary duty to the ward."

2. "Even assuming *arguendo* that the conservator was required to present the settlement agreement to the Probate Court, the Circuit Court erred in

holding that the failure to make that presentation resulted in a satisfaction of the judgment rendered at trial."

The Court of Appeals held that the trial court was correct in holding that the parties intended that approval by the probate court was to be a condition precedent to liability under the settlement agreement, but held that the circuit court erred in satisfying the judgment based on that agreement because it could not properly conclude that the probate court would have approved the settlement if submitted to it for approval. 39 Or App 287, 291, 592 P2d 239 (1979). We agree that the parties intended that approval by the probate court was to be a condition precedent to liability under the settlement agreement, but do not agree with the Court of Appeals in its holding that the circuit court erred in satisfying the judgment based on that agreement.

ORS 126.313(19), enacted in 1973 (Or Laws Ch 823, § 60), provides that:

"A conservator, *acting reasonably* in efforts to accomplish the purpose for which he was appointed, may act *without court authorization or confirmation* to:

"* * * * *

"(19) * * * *settle a claim by* or against the estate or *the protected person by compromise,* arbitration, or otherwise * * *." (Emphasis added)

Prior to the adoption of that statute, and under the terms of what was then ORS 126.270 (repealed, 1973 Or Laws Ch 823, § 154), a conservator or guardian representing a minor in an action for personal injuries had no authority to settle such a case without prior approval by the court. Because of the adoption of ORS 126.313(19), however, the conservator in this case had authority to enter into a binding agreement for the settlement of this case without either prior or subsequent approval by a court, provided that he "acted reasonably." As previously noted, it was stipulated that this settlement agreement was "reasonable at the time made."

Plaintiff contends that despite the provisions of ORS 126.313(19) he was required to submit this settlement agreement for approval by the probate court because of the provisions of Rule 11.07(2) of the Probate Court of Multnomah County, which was promulgated under the supervisory powers granted probate courts by ORS 111.085.[2] Rule 11.07(2) provided as follows:

"A petition for an Order authorizing settlement of a personal injury claim of a minor will be considered in open court at which time both the ward and the guardian shall be in attendance."

That rule was apparently adopted prior to the repeal in 1973 of ORS 126.270 and the adoption of ORS 126.313(19). Because, however, a conservator is now specifically authorized by that statute to enter into binding agreements to settle personal injury cases "without court authorization or confirmation," the parties were not required by Rule 11.07 to submit the settlement agreement in this case to the probate court for approval. *See Bank of Beaverton v. Godwin et al,* 124 Or 166, 169, 264 P 356 (1928), and *Schnitzer v. Stein,* 96 Or 343, 347, 189 P 984 (1920). It follows that any requirement that this settlement agreement be submitted to the probate court for approval must rest upon the agreement of the parties, rather than upon the requirements of Rule 11.07.

In this case, as held by both the circuit court and the Court of Appeals, it was stipulated that the parties intended to submit this settlement agreement to the probate court for approval. We believe it to be implicit in this agreement that a duty was then imposed upon the conservator to submit the settlement agreement to

---

[2] ORS 111.085 provides:

"The jurisdiction of the probate court includes, but is not limited to:

"* * * * *

"(8) Supervision and disciplining of personal representatives, guardians and conservators."

the probate court for approval. Also, it is well established that a party to a contract cannot take advantage of his own failure to perform. *Public Market Co. v. Portland,* 171 Or 522, 588, 130 P2d 624, 138 P2d 916 (1943).

Plaintiff contends that because of the fiduciary duty of the conservator to act in the best interests of the minor represented by him, and even if he originally undertook a duty to submit the settlement agreement to the court for approval, once the $500,000 judgment in favor of the minor was affirmed on appeal, he no longer had a duty to submit the agreement to accept $450,000 in settlement of the case to the probate court because to do so would have been contrary to the best interests of the minor and in violation of his fiduciary duty to the minor.

We hold, however, that although a conservator in such a case is under a strict fiduciary duty to serve the best interests of the minor at the time that he enters into such a settlement agreement with respect to the amount to be paid and other terms of such an agreement, once, "acting reasonably," he enters into a settlement agreement that is otherwise a legal and binding agreement, as authorized by ORS 126.313(19), he has discharged that fiduciary duty and is bound by the terms of that agreement.[3] If the rule were otherwise any fiduciary, including an executor, administrator, conservator or trustee, could refuse to perform any agreement entered into by him with impunity whenever it would be to the "best interest" of the estate, ward or beneficiary not to perform. We believe this holding to be consistent with the established policy of the courts to encourage the settlement of litigation. *See*

___

[3] In support of plaintiff's contention that the fiduciary duty of the conservator to act in the best interest of the minor required that he refuse to submit the settlement agreement to the court for approval, plaintiff cites *Boyd v. Boyd,* 112 Or 658, 230 P 541 (1924); *Kirk v. Mullen,* 100 Or 563, 197 P 300 (1921), and *Williams v. Briggs,* 263 Or 577, 502 P2d 245 (1972). Those cases are not on point because, among other things, they involved sales of real property of a minor under statutes requiring approval of such sales and were decided prior to the enactment of ORS 126.313(19).

[534]

*Klussman v. Day et ux,* 107 Or 109, 116, 213 P 787, 214 P 348 (1923), *Ellingsworth v. Jackson,* 170 Or 34, 45-46, 131 P2d 781 (1942), and *Wheeler v. McNett,* 281 Or 485, 488-89, 575 P2d 649 (1978).

Both of the parties to this case contemplated the risk of an unfavorable decision on appeal, and the very purpose of the settlement agreement was to provide protection to both parties against such a possibility. In the event that the $500,000 judgment in favor of the plaintiff had been reversed on appeal, plaintiff would surely have submitted the settlement to the probate court for approval and would also have demanded that defendant abide by the terms of the settlement agreement. In our opinion, the same result should follow upon the affirmance of that judgment. It also follows, in our opinion, that the conservator in this case had a duty under the settlement agreement to submit it to the probate court for approval.

It remains to consider plaintiff's further contention (with which the Court of Appeals agreed) that even if he had a duty to submit the settlement agreement to the probate court for approval, it was error for the circuit court to satisfy the judgment upon payment of $450,000, in accordance with the settlement agreement, because no one knows whether or not the probate court would have approved the settlement.

It appears from the record of this case that the parties have stipulated that the settlement agreement was fair and reasonable at the time that it was made; that on April 28, 1976, the conservator met with the probate judge, who then stated that he "would approve the settlement subject to the understanding of the settlement and the agreement by the natural parents." It also appears that the understanding of the parents of the settlement and their agreement to its terms was set forth in the petition signed by them and that the father also subsequently told the probate judge that he had agreed to the settlement. Finally, it appears from

the record that the probate judge, when later asked whether he would have formally approved the settlement stated:

"Yes, there is no question about that, but you have to ask first. At least, I don't think there is any question about that. I haven't been through it with the parents."

█ There is nothing in the record to suggest that if the conservator had subsequently submitted to the probate court the written petition for approval of the settlement, as the conservator had a duty to do, the probate court would not have approved it because the only condition imposed by his previous informal approval of the settlement was that the parents understood its terms. As previously stated, the parents did understand and approve the terms of the settlement. Under these circumstances, we believe that upon the satisfaction of that condition, there was such an approval of the settlement by the probate court as to constitute substantial compliance with the contractual condition that the settlement be approved by the probate court. *See* 3A Corbin on Contracts, 309, § 708 (1960). *Cf. Walton et ux v. Denhart et ux,* 226 Or 254, 261-262, 359 P2d 890 (1961), and *Johnson v. Meyers,* 91 Or 179, 177 P 631 (1919). Also, as previously noted, a party to a contract cannot take advantage of his own failure to perform. *Public Market Co. v. Portland, supra,* at 588.

It follows, in our judgment, that the circuit court did not err in its enforcement of the settlement agreement by satisfying the judgment in favor of the plaintiff, it having also been stipulated that the sum of $450,000 had been paid by defendant to plaintiff, as required by the settlement agreement.

It also follows that the Court of Appeals is reversed for its holding to the contrary and that the order of the circuit court is affirmed.

**DENECKE, C. J.,** specially concurring.

I specially concur to state why I concur with the majority's decision that the Court of Appeals' decision should be reversed.

The parties stipulated that they agreed upon a settlement. They also stipulated that the agreement was reasonable and that it had the support of the minor's parents and the conservator when made. In addition, they stipulated that the conservator would petition the probate court for approval of the agreement. I agree with the majority that the conservator had a duty to submit the agreement to the probate court for approval.

No statute required the parties to submit the agreement for the approval of the probate court. Judicial approval was required only to satisfy the terms of the settlement agreement. Given the stipulated facts that the settlement proposal was reasonable when made and that it had the support of all the parties when made, the probate judge would have had no grounds not to approve the settlement. For this reason the enforcement of the settlement agreement by the circuit court was correct.

Lent, J., joins in this opinion.